IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Antonio Bishop, | Case No. 1:21cv1541 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| Annette Chambers, et al., | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

*Pro se* plaintiff Antonio Bishop, currently incarcerated at Mansfield Correctional Institution ("ManCI"), filed a civil rights complaint under 42 U.S.C. § 1983 against the following 16 defendants: Annette Chambers, Director of the Ohio Department of Rehabilitation and Correction ("ODRC"); Earlena Miller, Corrections Officer and Chief Legal Inspector; Chris Lambert, Corrections Officer and Chief Legal Inspector; "Sheldon," Warden; "McConahay," Warden; "Cotton," Corrections Officer, Unit Manager, and Chief; "Kennard," Corrections Officer, Unit Manager, and Chief; Lisa Booth, Corrections Officer and Inspector; Dana Blankenship, Corrections Officer and Inspector; "Sheppard," Corrections Officer and Unit Manager; "Pierce," Corrections Officer and Captain; "Dengus," Corrections Officer; "Legga," Corrections Officer; "Cline," Corrections Officer; "Price," Corrections Officer; and "Carrick," Corrections Officer. (*See* Doc. No. 1) Plaintiff directs his claims against the defendants in their official and individual capacities.

For the following reasons, this action is dismissed in part.

I. Background

Plaintiff's complaint concerns his incarceration at ManCI beginning in June 2020 when he was transferred from Belmont Correctional Institution. Liberally construing the complaint, it appears that Plaintiff claims an officer's actions subjected him to physical violence and sexual harassment, he was assaulted by a corrections officer at ManCI, he was retaliated against, and the conditions of his confinement in suicide watch violated his constitutional rights.

Plaintiff states that he was transferred to ManCI for a "disciplinary reason related to a PREA [presumably "Prison Rape Elimination Act"] incident." He claims that the decision related to this incident was overturned and he was a "level 2 inmate." Therefore, according to Plaintiff, he did not belong in ManCI. (*See* Doc. No. 1 at 8) Plaintiff states that when he arrived at ManCI, he told Officer Kennard that because his Level 3 placement was overturned, he was in the wrong security prison. (*Id.*) Plaintiff alleges that Kennard "left a PREA tag" next to his name and "staff members" were informing inmates of his PREA conviction and his "sexual identity." According to Plaintiff, as a result of this information getting out, he was assaulted by an inmate on July 29, 2020 and October 31, 2020. (*Id*. at 9) Plaintiff claims an inmate explained that Plaintiff was "a fag and a predator" before he punched him. He also claims that Warden Sheldon's oversight of Kennard "caused [Plaintiff] to be kicked in the face," and it "left [him] open to sexual discrimination." (*Id.*)

On November 10, 2020, Plaintiff "refused to lock" because he was "being pressed because of [his] sexual identity and being tagged a predator." It appears that Plaintiff claims that the exposure of his sexual identity continued to subject him to harassment, and even after he was moved to a different location within ManCI, he continued to experience the same harassment

throughout November. (*Id.*) Plaintiff states that he sent numerous kites to Officers Sheppard and Kennard about the harassment.

According to the complaint, on March 28, 2021, Plaintiff was having "issues" with his "bunkie" because the bunkie heard Plaintiff was a "fag and a predator." When Plaintiff complained to the shift captain, he was told he could not move. Plaintiff states that he felt "threatened for his life" and he engaged in an altercation. Plaintiff alleges that after the fight, Officer Dengus assaulted him. Plaintiff claims Dengus twisted and bent his arms above his shoulders and repeatedly banged Plaintiff's head against the wall. Plaintiff received medical treatment after the alleged assault. According to Plaintiff, he was told that he had an injury to his right shoulder rotator cuff that could be "a nagging injury for life." (*Id.* at 10)

On April 12, 2021, Plaintiff met with Officer Booth for a "use of force" investigation. Plaintiff states that after speaking with Booth, he was sent to segregation. Plaintiff alleges that Booth used segregation to deter him from using the grievance process. (*Id.* at 11) It appears that Plaintiff ultimately filed a grievance, which was denied by Officer Blankenship, and he filed an appeal, which was denied by Officer Lambert. Plaintiff also claims that Warden McConahay was "overseeing this injustice and abuse of his civil rights." (*Id*. at 12)

Plaintiff states that he heard rumors that Dengus placed a hit on his head for filing a use of force complaint. Thereafter, he was moved to an area "where all the rumors were coming from." (*Id.*) When he told Booth, Plaintiff was advised to "refuse lock." When he arrived in his new quarters, Plaintiff requested protective custody. His request was denied. According to Plaintiff, he then requested to be placed on suicide watch. The complaint alleges that Captain Pierce advised Plaintiff that he was being placed on suicide watch and Officer Carrick escorted Plaintiff to his cell. Plaintiff claims that he was left in the cell where Captain Pierce and Officer Cline "saw

[Plaintiff] lying on the concrete floor and made no attempt to give [him] a mat." Plaintiff also claims that he did not feel safe because he "was sure Officer Dengus and Captain Pierce and other staff members were going to make an attempt [on his] life." (*Id.* at 13) Ultimately, Plaintiff was moved to a "constant watch" cell. Plaintiff claims that Officers Legga and Price told Plaintiff he could not move to another cell because he was gay. (*Id.*)

Plaintiff requests that Officer Cotton "stop denying [Plaintiff's] right to a fair security review" and return Plaintiff to a Level 2 security. He also seeks unspecified monetary damages.

## II. Standard of Review

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). A district court, however, is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the Court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A; *Siller v. Dean*, No. 99-5323, 2000 U.S. App. LEXIS 1494, at *5 (6th Cir. Feb. 1, 2000); *see Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The factual allegations in the pleading must be

sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but he or she must provide more than "an unadorned, the Defendant unlawfully harmed me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

When reviewing a complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk*, 99 F.3d at 197 (6th Cir. 1996)). The courts, however, are not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Grinter v. Knight*, 532 F.3d 567, 577 (6th Cir. 2008) (citation omitted); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

### III. Law and Analysis

### A. The Parties

Plaintiff has filed this civil rights complaint under 42 U.S.C. § 1983 against 16 defendants in their official and individual capacities. The Court liberally construes the complaint as asserting violations of the First and Eighth Amendments. The Court finds, however, that Plaintiff fails to state a claim against the following defendants.

### 1. Chambers, Miller, Cotton, Legga, and Price

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines*, 404 U.S. at 520-21; *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir.1991), the Court is not required to conjure unpleaded facts or construct claims against defendants on behalf of a *pro se* plaintiff. *See Bassett v. National Collegiate Athletic*

*Ass'n*, 528 F.3d 426, 437 (6th Cir. 2008). The complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard v. Shelby Cty. Bd. of Edn.*, 76 F.3d 716, 724 (6th Cir.1996) (citation omitted). Further, it is a basic pleading requirement that a plaintiff must attribute specific factual allegations to particular defendants. *Twombly*, 550 U.S. at 555 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).

Here, Plaintiff fails to meet even the most liberal reading of the *Twombly* and *Iqbal* standard as his pleading fails to identify how Defendants Annette Chambers, Earlina Miller, Cotton, Legga, and Price harmed him. Indeed, Plaintiff fails to include any factual allegations concerning Chambers, Miller, and Cotton. Merely listing a defendant in the caption of the complaint, but raising no specific factual allegations against the defendant, is insufficient to raise a plausible claim. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978)). Plaintiff also fails to assert a discernable constitutional claim against Legga and Price. Plaintiff's only allegation against Legga and Price is that they refused to move Plaintiff out of the constant watch cell "because he is gay." (*See* Doc. No. 1 at 13) Plaintiff does not allege what constitutional right Legga and Price violated, and it is not apparent from the face of the complaint. And the Court is not required to construct a claim on Plaintiff's behalf.

Plaintiff's complaint against Chambers, Miller, Cotton, Legga, and Price does not satisfy the minimum pleading requirements of Federal Civil Procedure Rule 8. Any claims against these defendants are therefore dismissed on this basis.

## 2. Official Capacity Defendants

The State of Ohio and its agencies are immune from suit under the Eleventh Amendment of the United States Constitution unless the State's immunity has been abrogated by Congress or the State of Ohio has consented to be sued. *See Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997) (Eleventh Amendment immunity applies to state agencies and instrumentalities) (citations omitted). When enacting § 1983, Congress did not abrogate the State's Eleventh Amendment immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Nor has the State of Ohio consented to suit under § 1983. *See Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992) (the State of Ohio has not waived its Eleventh Amendment immunity from suit in § 1983 cases). And "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will*, 491 U.S. at 71; *see also Grinter*, 532 F.3d at 572 (6th Cir. 2008). Therefore, Eleventh Amendment immunity extends to state officials sued in their official capacity. *McCormick v. Miami Univ.*, No. 1:10-cv-345, 2011 U.S. Dist. LEXIS 48467, at *55-56 (S.D. Ohio May 5, 2011) (citing *Turker v. Ohio Dep't Rehabilitation & Corr.*, 157 F.3d 453, 457 (6th Cir. 1998)).

Here, all of the defendants are either employed by ManCI or the ODRC. Plaintiff's official capacity claims against these defendants are therefore construed as claims against the State of Ohio. And because the State of Ohio is immune from suit, Plaintiff's official capacity claims against the defendants for monetary relief are also barred under the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity").

### 3. Sheldon, McConahay, Blankenship, Lambert, and Sheppard

To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42 (1988). To hold an individual defendant liable under § 1983, a plaintiff must allege "personal involvement" in the alleged unconstitutional conduct. *See Grinter*, 532 F.3d at 575 (personal involvement is required to incur liability under § 1983). Concerning any claim in their individual capacity, the defendants cannot be liable for a § 1983 claim "premised solely on a theory of *respondeat superior*, or the right to control employees." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Rather, any liability under § 1983 must be "based only on [the defendants] own unconstitutional behavior." *Id.*; *see also Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) (noting that personal liability "must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants"). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A plaintiff must therefore show, "that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Here, Plaintiff alleges that Warden Sheldon's "oversight" of Kennard "caused [Plaintiff] to be kicked in the face," and it "left [him] open to sexual discrimination." (*See* Doc. No. 1 at 9) He also alleges that Warden McConahay was "overseeing this injustice and abuse of his civil rights." (*Id*. at 12) Plaintiff fails to allege Sheldon and McConahay were personally involved in

the alleged constitutional violation. And an allegation of a mere failure to act or the failure to properly supervise an employee is insufficient to state a claim under § 1983.

Additionally, Plaintiff claims that Blankenship denied his grievance concerning the alleged assault by Dengus and Lambert denied his appeal. He also appears to claim that Officer Sheppard ignored Plaintiff's kites concerning the harassment he was allegedly enduring. Plaintiff's claims against Blankenship, Lambert, and Sheppard are based solely on their responses to his grievances– either the denial of his grievances or the defendants' failure to remedy the alleged misconduct. The mere denial of a prisoner's grievance or the failure to intervene on a prisoner's behalf does not rise to the level of a constitutional violation. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).

Because Plaintiff fails to state any facts suggesting Sheldon, McConahay, Blankenship, Lambert, and Sheppard directly participated, encouraged, authorized, or acquiesced in the claimed wrongful conduct, any § 1983 claim against them in their individual capacities must fail.

### B. The Claims

### 1. Eighth Amendment

Plaintiff's complaint, when liberally construed, implicates three Eighth Amendment claims: (1) deliberate indifference amounting to a failure to protect; (2) use of excessive force; and (3) deliberate indifference regarding the conditions of confinement in suicide watch.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). The Eighth Amendment protects inmates by requiring that "prison officials ... ensure that inmates receive adequate food, clothing, shelter, and medical care, and ...

'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984)). This requirement, however, does not mandate that a prisoner be free from discomfort or inconvenience during his or her incarceration. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). Prisoners are not entitled to unfettered access to the medical treatment of their choice, *see Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992), nor can they "expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter*,175 F.3d 378, 405 (6th Cir. 1999). In sum, the Eighth Amendment affords the constitutional minimum protection against conditions of confinement which constitute health threats but does not address those conditions which cause the prisoner to feel merely uncomfortable or which cause aggravation or annoyance. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation).

The Supreme Court in *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991), established a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. *Id.* Seriousness is measured in response to "contemporary standards of decency." *Hudson*, 503 U.S. at 8. Routine discomforts of prison life do not suffice. *Id.* Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. *Id.* at 9. A plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. *Id.* Deliberate indifference is characterized by obduracy or wantonness, not

inadvertence or good faith error. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Liability cannot be predicated solely on negligence. *Id.* A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

### **Failure to Protect**

Plaintiff claims that Officer Kennard "left a PREA tag" next to his name that presumably revealed the circumstances of Plaintiff's conviction and his "sexual identity." Plaintiff alleges that as a result of Kennard's actions, he was subjected to repeated physical abuse and sexual harassment from other inmates.

The Eighth Amendment imposes a duty upon prison officials to protect prisoners in custody from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 833. A prison official's duty, however, is to ensure "'reasonable'" safety, not absolute safety. *Id.* at 844-45 (citation omitted). "An inmate who claims a violation of his Eighth Amendment rights based on a failure of the prison officials to prevent harm must make two showings: first, that he was incarcerated under conditions that posed a substantial risk of serious harm, and second, that the prison official had a sufficiently culpable state of mind - one of 'deliberate indifference' to inmate health or safety." *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 464 (6th Cir. 2001) (citing *Williams v. Mehra*, 186 F.3d 685, 691-92 (6th Cir. 1999) (en banc) and *Farmer*, 511 U.S. at 834).

Even assuming Plaintiff has demonstrated he was at risk of serious harm, Plaintiff fails to plead facts demonstrating Kennard's subjective intent to put Plaintiff in harm's way. Plaintiff alleges only that Kennard "left" the information next to his name. Plaintiff does not allege that Kennard shared the personal information. Rather, he alleges that other unnamed "staff members" reportedly shared the information with the inmates.

Absent factual allegations demonstrating Kennard's obduracy or wantonness in leaving the sensitive personal information out, Plaintiff's claim against Kennard fails to rise from a possible claim to that of a plausible claim for relief. Plaintiff therefore fails to state a claim of deliberate indifference against Officer Kennard.

### **Use of Excessive Force**

Plaintiff appears to assert a claim against Officer Dengus for the use of excessive force in violation of the Eighth Amendment.

Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," *Rhodes*, 452 U.S. at 347, "only those deprivations denying 'the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" *Wilson*, 501 U.S. at 298. In the context of excessive force, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated. *See Whitley*, 475 U.S. at 327. This is true whether significant injury is evident or not. *Id.*

Not every malevolent touch by a prison guard, however, gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes *de minimis* uses of physical force as constitutional violations, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley*, 475 U.S. at 327 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The standard to apply when prison officials are accused of using excessive physical force in violation of the Eighth

Amendment is whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 10-11.

Here, Plaintiff states that after an altercation with an inmate, Dengus twisted and bent his arms above his shoulders and repeatedly banged his head against the wall. According to Plaintiff, the alleged assault resulted in the need for medical treatment. At the pleading stage, Plaintiff need only allege sufficient facts to suggest he has a plausible claim against Dengus for use of excessive force. Whether Dengus acted to restore discipline or whether he acted maliciously to cause harm to Plaintiff is a question of fact. Plaintiff has alleged sufficient facts to state a claim for use of excessive force that is plausible on its face.

This action shall proceed against Dengus on Plaintiff's use of excessive force claim.

### Conditions of Confinement

Plaintiff states that upon his request, he was placed on suicide watch. He alleges that Officer Carrick escorted him to his cell, and Captain Pierce and Officer Cline "saw [Plaintiff] lying on the concrete floor and made no attempt to give [him] a mat." The Court liberally construes this claim as a conditions of confinement claim.

To establish a deliberate indifference claim concerning the conditions of confinement, a prisoner must allege an "extreme deprivation." *Hudson*, 503 U.S. at 9. In considering whether an Eighth Amendment violation has occurred, a court must consider "'[t]he circumstances, nature, and duration of a deprivation.'" *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006), abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199, 220, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). And the Sixth Circuit has concluded that requiring an inmate to sleep on the floor without a mattress for a relatively short period of time does not violate the Eighth Amendment. *See Grissom v. Davis*, 55 F. App'x 756, 757 (6th

Cir. 2003) (seven day deprivation of mattress and blanket did not constitute serious deprivation and deliberate indifference required to support an Eighth Amendment claim.).

Here, Plaintiff does not allege any facts suggesting that he was confined to a concrete floor for an inordinate amount of time or under conditions that would constitute extreme deprivation. His purported Eighth Amendment claim against Captain Pierce, Officer Carrack, and Officer Cline concerning the conditions of his confinement therefore fails to state a plausible claim for relief.

### 2. First Amendment

It appears that Plaintiff filed a complaint against Officer Dengus for his alleged use of excessive force. Plaintiff claims that he met with Officer Booth for a "use of force" investigation, and after speaking with Booth, Plaintiff was placed in segregation. Plaintiff alleges that Booth placed him in segregation to deter him from using the grievance process. The Court construes Plaintiff's allegations as a retaliation claim.

Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). To state a prima facie case for retaliation prohibited by the First Amendment, Plaintiff must establish: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that a causal connection exists between the first two elements. *Thaddeus-X*, 175 F.3d at 394.

An adverse action is one that is "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 398). Plaintiff does not have to show actual deterrence. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005). Even the threat of an adverse action can satisfy

this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct. *Hill*, 630 F.3d at 472; *Thaddeus-X*, 175 F.3d at 398. While this element is not an overly difficult one for Plaintiff to meet, "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations." *Hill*, 630 F.3d at 472-73 (quoting *Thaddeus-X*, 175 F.3d at 398).

Here, Plaintiff claims that Dengus assaulted him. Filing a grievance against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff alleges that Booth placed him in segregation after speaking with him about Dengus's alleged use of force. Placing a prisoner in administrative segregation is an adverse action. *See Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002); *Clay v. Weidner*, No. 1:19CV1916, 2020 U.S. Dist. LEXIS 104825, at *21 (N.D. Ohio June 16, 2020). Plaintiff's claim that he was disciplined after speaking with Booth concerning her use of force investigation suggests a causal connection between the first two elements. *See Maben v. Thelen*, 887 F.3d 252, 268 (6th Cir.2018) (noting that there was "a suspicious temporal proximity between Maben's grievance and the alleged retaliatory action" when plaintiff was disciplined "immediately after" plaintiff complained to the correctional officer) (emphasis in original); *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) ("[T]emporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'") (citation omitted).

Because Plaintiff has sufficiently alleged that Booth engaged in retaliatory conduct, Plaintiff's First Amendment retaliation claim survives the Court's initial screening.

## IV. Conclusion

Accordingly, Plaintiff's claims against Chambers, Miller, Cotton, Legga, and Price are dismissed pursuant to Federal Civil Procedure Rule 8. Plaintiff's official capacity claims against all Defendants for monetary relief are barred by the Eleventh Amendment and are therefore also dismissed. And Plaintiff's individual capacity claims against Sheldon, McConahay, Blankenship, Lambert, and Sheppard are dismissed pursuant to 28 U.S.C. §1915A. Finally, Plaintiff's Eighth Amendment claims against Kennard, Pierce, Carrick, and Cline are dismissed pursuant to 28 U.S.C. §1915A.

This case shall proceed against Officer Dengus for Plaintiff's use of excessive force claim and Officer Booth for Plaintiff's retaliation claim.

**IT IS SO ORDERED.**

Date:  March 23, 2022

 s/*Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE